ADAM GORDON
United States Attorney
MARK S. LAURICELLA
Assistant United States Attorney
New York Attorney No. 5440623
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619)546-9305
mark.lauricella@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALFONSO MARTINEZ GONZALEZ (1), JOSE ANGEL RENTERIA (3), JUAN ANGEL MENDOZA GOMEZ (4), and EMILIO ANCHUNDIA BAILON (5),<br><br>Defendants. | Case No.: 24-CR-482-JO<br><br>**UNITED STATES' OMNIBUS SENTENCING MEMORANDUM AS TO DEFENDANTS 1, 3, 4, AND 5**<br><br>Judge: Hon. Jinsook Ohta<br>Date: September 26, 2024<br>Time: 8:30 a.m. |

The UNITED STATES OF AMERICA, by and through its counsel, Adam Gordon, United States Attorney, and Mark S. Lauricella, Special Assistant United States Attorney, hereby files its Omnibus Sentencing Memorandum as to Defendants Alfonso Martinez Gonzalez, Jose Angel Gonzales Renteria, Juan Angel Mendoza Gomez (aka Johny Arturo Medina Gomez) and Emilio Anchundia Bailon. This memorandum is based upon the files and records of the case.

## INTRODUCTION

Alfonso Martinez Gonzalez, Jose Angel Gonzales Renteria, Juan Angel Mendoza Gomez (aka Johny Arturo Medina Gomez) and Emilio Anchundia Bailon (defendants)

are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503.

On February 26, 2024, a Maritime Patrol Aircraft first laid eyes on the defendants' go-fast vessel traveling in the Eastern Pacific Ocean. With no other vessels in the area and a position over 469 nautical miles south from land in Acapulco, Mexico, the defendants' vessel possessed the hallmarks of narco-trafficking. It had multiple multi-gallon fuels barrels on deck, an assortment of bales wrapped in burlap, and was operating in a known drug trafficking area. With Coast Guard Cutter MUNRO operating nearby, a helicopter was launched to hover above the defendants' vessel and command the defendants to stop. Unfortunately, audible commands in English and Spanish and blue law enforcement lights failed to compel compliance from the defendants. Equally so, seventeen (17) warning shots ahead of the defendants' bow also failed to gain compliance. The defendants' continued to steer their vessel to thwart law enforcement and began jettisoning their balesof cocaine overboard into the depths of the ocean. Only after disabling fire to the defendants' engines did their attempt at escape cease.



(Frame above is from a Coast Guard video that shows defendants jettisoning bales of cocaine from their go-fast vessel into the ocean while attempting to flee from law enforcement)

//

//

(Frame above is from a Coast Guard video that shows black bales of cocaine floating away after being jettisoned by defendants)

Undoubtedly, maritime cocaine smuggling is complicated. The skill, experience, and coordination necessary to transport large quantities of cocaine on the high seas, on a 30-foot open-style panga vessel is significant. Had the defendants not been stopped by the Coast Guard, their voyage transporting approximately 1,410 kilograms (3,108 pounds) of cocaine from Ecuador to Mexico would have lasted over a week and required navigating at least 1500 nautical miles on the open ocean. Given the length of the journey and the requirements involved, the nature and extent of their participation is significant.



(Frame to the right is from a Coast Guard video that shows the defendnts onboard their go-fast vessel with bales of cocaine and fuel tanks needed for their multi-day open ocean journey)

3

As this and other events show, maritime drug smuggling is also extremely dangerous. An appropriate sentence in this case should be substantial and reflect several key sentencing principles, including the need to deter maritime drug smuggling in general, the need to deter each defendant from reoffending, and the need to protect society from the harm caused by trafficking extreme quantities of drugs. Appropriate sentencing should also discourage these ventures as they present a danger to life at sea.

As seasoned fishermen, each of the defendants were selected for—and agreed to—smuggle drugs due to their familiarity with the marine environment and their trustworthiness in carrying out the perilous task. Each possessed a lifetime of experience on the water which proved critical to operating and navigating a go-fast vessel in an environment that can best be described as austere and unforgiving. Each volunteered in return for significant payment—upwards of $15,000. Because each of these men possess marketable skills attractive for maritime smuggling and the allure of significant financial gain from these ventures will always be there, the sentence must be sufficient to deter each from reoffending.

Furthermore, it is important for the Court to consider the need to avoid unwarranted sentencing disparities among defendants who have committed similar offenses under 18 U.S.C. § 3553(a). From 2020 to present, 89 defendants have plead guilty and been sentenced for cocaine distribution onboard a vessel by Judges of the U.S. District Court for the Southern District of California. All involved being appreheneded operating their vessel on the high seas with large sums of cocaine, ranging from a low of 40 kilograms to a high of 3,000 kilograms. The average weight per case was 1,105 kilograms of cocaine.

The average sentence received by those 89 defendants was 72.94 months in custody. The highest sentence received during this timeframe was 200 months in custody. The lowest was 40 months, received by only one defendant, in a case involving

4

only 257 kg of cocaine. It is important to note that his five co-defendants were sentenced to 58, 63, 56, 56 and 56 months respectively. In fact, only 7 of the 89 total defendants (approximately 7.8% of all defendants) sentenced for similar conduct in the U.S. District Court for the Southern District of California have received a sentence of less than 50 months in custody.

The present case involves 1,410 kilograms, which is about 29% more weight than the 1,105 kilogram average per case over the last five years in the U.S. District Court of the Southern District of California. Furthermore, defendants in the present case did not comply with instructions from law enforcement to stop, ignored 17 warning shots, jettisoned their bales of cocaine in attempt at evidence spoliation, and only stopped when the Coast Guard used disabling fire on their enginges. Thus based on the amount of cocaine they smuggled, their total lack of compliance, plus evidence spoliation, a sentence above the District average of 72.94 months is warranted.

After taking into consideration the seriousness of the offense and the remaining 3553(a) factors, including the defendants' repeated efforts to obstruct capture and distance themselves from incrimination, the United States recommends a sentence of 84 months custody, followed by 5 years of supervised release, no fine, and a $100 special assessment.

## THE GUIDELINES

### A. Calculation

Under USSG § 2D1.1(c)(1), the base offense level is 38. This is based on 1,410 kilograms of cocaine. The United States is not recommending any enhancements or reductions for role. Since this was a team evolution and the nature and extent of each defendant's participation was significant, minor role is not appropriate. There is a two-level upward adjustment since all five defendants admitted to acting as either a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying controlled substances under USSG § 2D1.1.(b)(3)(C). There is a two-

level downward adjustment for Safety Valve, and a three-level downward adjustment for acceptance of responsibility. Each of the defendants has met the requirements for Safety Valve under USSG § 2D1.1.(b)(18) and 5C1.2. Each is in Criminal History Category I per the PSR. There is a two-level downward adjustment for Expeditious Resolution/Full Appellate Waiver under USSG § 5K2.0. This results in a guideline range of 108 to 135 months in custody. The United States recommends a sentence of 84 months in custody. This accounts for the unique personal characteristics of the defendants, as well as the speed with which the defendants resolved this case, saving the Government resources, and foregoing substantive pre-trial motions.

**B. Recommendation**

Several factors justify the Government's recommendation. First, the defendants pled guilty to possession of cocaine with intent to distribute on board a vessel. They were tasked with transporting a vast sum of cocaine to Mexico by sea. This coordinated voyage would take the defendants over a week to complete and would require their teamwork and distinct skillsets in navigating an open-hulled panga over 1500 nautical miles. Had their mission been successful, the cocaine delivered in Mexico would have been forwarded on to the United States and would have caused immeasurable harm to the public. In return for their trusted skill, maritime smugglers are known to be paid handsomely, often several tens of thousands of dollars if successful. Payment of $15,000, as reflected in what defendants in this case expected to be paid is not outside the realm of possibility for this type of smuggling.

The sophistication, complexity, and trust involved in carrying out the offense similarly influences the Government's sentencing recommendation. The defendants acted as more than mere drug couriers, as is commonly seen in this District for land-based drug smuggling crimes. In contrast to a courier tasked with making a short drive across the border, maritime smuggling requires actual expertise. Not everybody can do it. To operate a 30-ft vessel and know where to go and what course to steer, correcting

for sea and weather conditions, is a genuine skill. It is not a simple matter of plugging the coordinates into Google Maps. These vessels have no auto-pilot. Navigating a vessel over a multi-day journey and rendezvousing with other vessels at sea to refuel involves exercising judgment. Imprecision or lack of skill can cause any number of at-sea casualties, including the vessel taking on water, its motor failing, or worse.

Additionally, in contrast to land-crossings where the courier only has the drugs for a few hours, these ventures require the defendants to be trusted with the drugs for an extended period, a matter of days and weeks. As is known from investigating these cases, panga captains and crew are a trusted cohort and the cartels (on the sell and buy side) invest considerably to make these shipments possible. It would defy logic and common sense to let untrained and untrusted men guard the precious cargo in an environment that already carries significant natural risk. It can be assumed here that the defendants were carefully vetted.

In addition, the considerable decision-making authority that the defendants possessed while at sea influences the Government's recommendation. Out in the middle of the ocean hundreds of miles from shore, the defendants were alone in protecting and safeguarding the precious cargo. No one was there to direct their movements. They had no recruiter or manager on board. They were captains of their own ship. They only had each other to rely on. They were a team. These facts demonstrate an extraordinary degree of trust, control, and expertise not seen in typical border-bust cases, weighing strongly against a role adjustment. Correspondingly, the bold decision by the defendants to flee law enforcement and jettison cocaine overboard shows the trust, faith, and decision-making authority instilled in these defendants.

As mentioned, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate. This was a team evolution and the burden rests with each defendant to demonstrate that he was substantially less culpable than the

7

average participant. The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense. United States v. Dominguez-Caicedo, 40 F.4th 938, 964-66 (9th Cir. 2022) (noting that the relevant comparators are the actual participants in the defendant's crime—not that of every hypothetical member of a typical drug trafficking organization). None have met this burden. None were less culpable than the average participant—let alone substantially less culpable. Each was inescapably critical in carrying out the task.

Finally, given the need to generally deter others, and specifically deter these defendants from the financial allure of maritime drug smuggling, it is essential that the sentence reflects the seriousness of this offense and the harm from trafficking cocaine on the high seas. Maritime drug smuggling cases are ripe for recidivism. This District and others often see repeat offenders. The incentive to make large sums of money for trafficking drugs, compared against the relatively low risk of being caught in an expansive ocean, must be combated with the deterrence of significant sentences.

## CONCLUSION

After considering the 3553(a) factors, the United States believes the recommended sentence of 84 months in custody, followed by 5 years' supervised release, no fine, and a $100 special assessment is sufficient but not greater than necessary.

DATED: September 18, 2025

Respectfully submitted,

ADAM GORDON
United States Attorney

Mark S. Lauricella
Special Assistant U.S. Attorney

8